(C.D. 4344)

TRANS-ATLANTIC COMPANY *v.* UNITED STATES

---

United States Customs Court, Second Division

(Decided March 22, 1972)

*Allerton deC. Tompkins* for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Urban S. Mulvehill*, trial attorney), for the defendant.

Before RAO and FORD, Judges; NEWMAN, J., not participating

FORD, Judge: This case involves the proper classification of certain mild steel screws described on the invoice as "Flat Head Fully Thread Slotted Wood Screws * * * #6 x ¾"." They were classified under item 646.60, Tariff Schedules of the United States, which provides as follows:

> * * * screws, * * * all the foregoing not
> described in the foregoing provisions of
> this subpart, of base metal:
>    Of iron or steel:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

>    Screws:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

>      Other:

646.60        Having shanks or threads not over 0.24 inch in diameter_____    22.5% ad val.

Plaintiff contends said articles are wood screws and as such properly subject to classification under item 646.49 which provides as follows:

> Wood screws (including lag screws or
> bolts) of base metal:

646.49       Of iron or steel_____    12.5% ad val.

The record in this case consists of the official papers, one exhibit received on behalf of plaintiff and five exhibits received on behalf of defendant as well as the testimony of six witnesses, three on behalf of plaintiff and three on behalf of defendant.

Plaintiff's first witness, Mr. Richard Muenzer, a vice-president of the plaintiff company, merely served to identify the screws in collective exhibit 1 as being representative of the importations at bar.

Mr. Irving Soslow was next called on behalf of plaintiff. His duties included purchasing for plaintiff corporation. He described the merchandise at issue as being "three-quarter by six fully threaded, unhardened wood screw[s]" with gimlet points and rolled threads that went to the head. He pointed out that the gimlet point started the screws in wood and the screws were fully threaded so that they would have better holding power in hollow core doors. Mr. Soslow also admitted that a gimlet point is a common characteristic of many types of screws.

He testified that he was familiar with partially threaded wood screws, but he added that such screws would not be suitable for the uses to which the imported fully threaded screws were put. Mr. Soslow testified that a tapping screw would serve the same function as the screws at issue.

The witness added that because these screws were unhardened, they could not be used in sheet metal.

The witness admitted that the Fasteners' Standards of the Industrial Fasteners Institute described only one type of wood screw—the partially threaded wood screws.

Next called on behalf of plaintiff was Mr. Samuel Komisar, president of a company which imported steel fasteners. Mr. Komisar acknowledged he handled merchandise similar to that at issue. He stated that this type of screw, because of its softness, could not be used in metal, but could be used in linoleum, asbestos and some plastics, as well as in wood. Mr. Komisar testified that the trade refers to the screws as fully threaded wood screws, but that such a screw is not described in current standards set forth in the Fasteners' Standards. He indicated that the fully threaded wood screw, while a recent innovation in the United States, has been found in Europe for the past 50 years.

Mr. Komisar testified relative to the distinctions between the type of screw at bar and normal sheet metal screws, which are composed of a harder type of steel, and tapping screws. The latter require a harder type of metal composition. Another term for the screws according to the witness would be "unhardened sheet metal screws."

Defendant's first witness, Mr. Daniel Ricci, a chemist from the New York regional Customs Laboratory testified that he tested the screws and found the carbon content to be 0.08 percent.

Defendant's next two witnesses were both employed by U.S.M. Corporation, each in a different capacity. Their division of the com-

pany manufactures steel fasteners; no wood screws are manufactured. They do manufacture fully threaded tapping screws and sheet metal screws which differ from the screws at bar only as to the hardness of the metal.

Mr. Elias Lamberti, a sales and product manager working in the steel fastener field for over 10 years, testified that the screws at bar reflected the standards for a No. 6 tapping screw; he asserted that the screws at issue here did not display any of the characteristics set forth by the American Standards for wood screws. Mr. Lamberti defined a wood screw as one "having two-thirds of the shank threaded that is commonly used in wood applications." A tapping screw was described as a fastener which is usually threaded to the head which is generally used in sheet metal and is casehardened. He also testified that tapping screws are often used in wood and that his company often sold unhardened tapping screws. He asserted, though, that the primary characteristic of a wood screw is the two-thirds threaded portion of the screw.

Mr. Albert Church, a manager of sales engineering, with many years experience, was defendant's last witness. He testified similarly to Mr. Lamberti, as to the primary characteristic of a wood screw. He also asserted that if a screw was always used in wood it would be known as a wood screw. He did say that the merchandise at bar was an unhardened tapping screw, even if it was used exclusively in wood.

As there is no dispute between the parties that the imported articles are screws and that commercial designation is not involved, the issue therefore revolves about the extent of the common meaning, i.e., does it refer to a physically distinct type of screw, having only two-thirds of its shank threaded or does it embrace any kind of screw which is primarily used in wood?

We are of the opinion that the latter controls notwithstanding the fact that the statute provides *eo nomine* for wood screws. The use of an article provided for *eo nomine* has ofttimes been considered an important factor in determining the proper tariff classification. *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699 (1959). The intent of Congress in enacting the language "Screws, commonly called wood screws" from the Tariff Act of 1897 to the Tariff Act of 1930 clearly indicates the term to mean screws intended for use in wood. *The Summaries of Tariff Information*, 1920, 1921, 1929; *Dictionary of Tariff Information*, 1924. The dictionary definitions set forth in the case of *United States* v. *Astra Bentwood Furniture Co.*, 25 CCPA 340, T.D. 49434 (1938), and the present day dictionaries such as *Funk & Wagnalls Standard Dictionary*, interna-

tional edition (1963), p. 1449, and *Webster's Third New International Dictionary*, unabridged (1961), p. 2631, confirm the fact that wood screws are intended for use in wood.

On the other hand, the *"American Standard"* published by The American Society of Mechanical Engineers, defendant's exhibit A, and *The New American Machinists Handbook* (1955), indicate a thread length of approximately two-thirds of the screw length.

An examination of the record and plaintiff's collective exhibit 1, the imported screws, indicates to us that the imported article appears to be a hybrid developed for use in hollow doors, plywood, etc., wherein the thread to the head functions better than one partially threaded, yet is made of unhardened metal. Thus it is in the form of a screw ordinarily used in metal but is composed of unhardened metal and consequently unusable, as all witnesses agree, for that purpose. The imported screws appear to be primarily used in wood although admittedly they can be used in other soft material such as linoleum, asbestos and soft plastic.

Since our conclusion is that the imported screws are wood screws, classification under item 646.60, *supra*, must fall as the provision for wood screws under item 646.49, *supra*, is more specific. In addition, the language of the superior heading to item 646.60, *supra*, limits the screws provided therefor to such screws as are not described in the foregoing provisions of the subpart involved.

Accordingly we find the merchandise involved to be wood screws and as such subject to classification under item 646.49, *supra*, as claimed. To this extent, the claim in the protest is sustained.

Judgment will be issued accordingly.